Page 1

1            UNITED STATES DISTRICT COURT

2            SOUTHERN DISTRICT OF FLORIDA

3                CASE NO. 0:14-cv-62673-Cohn/Seltzer

4

5    TERRY MURPHY, ON HIS OWN BEHALF

     AND OTHERS SIMILARLY SITUATED,

6            Plaintiff,

7    -vs-

8    GLOBAL RESPONSE CORPORATION,

     A FLORIDA CORPORATION,

9            Defendant.

10   _____/

11

12           Wednesday, March 18, 2015

             Veritext, LLC

13           One East Broward Boulevard, Suite 1101

             Ft. Lauderdale, Florida 33301

14           4:00 - 4:30 p.m.

15

16           DEPOSITION OF CAMILO ABIRL

17

18

19   Deposition taken before TAMMY WALKER ZIVITZ, Registered

20   Professional Reporter and Notary Public in and for the

21   State of Florida at Large, in the above cause.

22

23

24

25

Composite Exhibit C

1      Q     Anything else?

2      A     No.

3      Q     So if we turn to page 2, your position is

4   that you're owed $396 in this case, right?

5            MR. QUILES:  Objection to form.

6            THE WITNESS:  Well, that's what the paper

7        states, but, no, I'll leave that to my

8        attorney, like, to figure out any type of

9        amount owed.

10  BY MR. LANDY:

11     Q     Okay.  This document was filed with the

12  Court, which detailed the amount of your claim,

13  right?

14           MR. QUILES:  Objection, form.

15           THE WITNESS:  Right.

16  BY MR. LANDY:

17     Q     And it reflects a totals here on the top

18  of $396, right?

19           MR. QUILES:  Objection, form.

20           THE WITNESS:  Yes.

21  BY MR. LANDY:

22     Q     Sitting here today, is there an amount of

23  money in addition to this that you believe you're

24  owed?

25     A     Since, like, I don't know the law like

1  that.  My attorneys, they, like, calculate that for

2  me.

3       Q    On page 1 of this document, it says here,

4  "That you are required to arrive at work an average

5  of 15 minutes before your shift," right?

6       A    Yes, it says that.

7       Q    That's still your position, right?

8       A    Yes.

9       Q    Who instructed you to arrive at work 15

10  minutes before your shift?

11       A    The supervisors, like, the people in

12  command.

13       Q    What are their names?

14       A    It was Leida something, and Mary from

15  Spain.  She was, like, supervising the takeoff of

16  the project; Patricia -- I just know first names,

17  I'm sorry.

18       Q    That's okay.  So Leida, Mary and Patricia?

19       A    Yes.

20       Q    Anybody else?

21       A    No, not that I can recall.

22       Q    Which one of them instructed you to arrive

23  at work 15 minutes before your shift?

24       A    Mary and Patricia.

25       Q    What exactly did they say?  First start

1      Q    Would you do any work before you clocked

2    in?

3      A    No.

4      Q    So if we had a record of all the times you

5    clocked in and clocked out, and you were paid for

6    all those times, that would be what you're claiming

7    here today, right?

8      A    If the records are accurate with the whole

9    time I was there, yeah.

10     Q    Fair enough.  On the 15 minutes before

11   your shift, you're not claiming that for days when

12   you were late or on vacation or on a personal day,

13   right?

14     A    No, of course not.

15     Q    Before this Statement of Claim, Exhibit 5

16   was filed, did you review any time records or

17   documents before it was -- before you approved of

18   this?

19     A    I mean, I've seen when my lawyer showed

20   me --

21           MR. QUILES:  Don't --

22           MR. LANDY:  Let me handle it -- not to

23       step in.

24           I'm not interested in hearing any

25       discussions between you and your attorneys.  If

Page 1

1            UNITED STATES DISTRICT COURT
             SOURHERN DISTRICT OF FLORIDA
2          CASE NO. 0:14-cv-62673-Cohn/Seltzer

3

4    TERRY MURPHY, on his own behalf and
     others similarly situated,

5

                    Plaintiff,

6

     vs.

7

     GLOBAL RESPPONSE CORPORATION,
8    a Florida corporation,

9                 Defendant.
     ----------------------------------/

10

11                     1 East Broward Boulevard
                       Suite 1101
12                     Fort Lauderdale, Florida
                       Thursday, April 2nd, 2015
13                     9:00 a.m. - 10:05 a.m.

14

15

16

17

18

19          DEPOSITION OF KIMESHA SCOTT

20

21        Taken before , Michael Monahan Registered
22   Professional Reporter and Notary Public for the
23   State of Florida at Large, pursuant to Notice of
24   Taking Deposition filed in the above cause.

25

1          MR. JONES:  Form objection, go ahead.

2      A      Yes, I did see the checks.

3      Q      Did you cash those checks?

4      A      No, I did not.

5      Q      You're making a claim in this case that

6  there is money owed to you by Global Response,

7  correct?

8      A      Correct.

9      Q      How much do you believe Global Response

10  owes you?

11          MR. JONES:  Form objection.  Go ahead.

12      A      I'll leave that to my attorney to

13  calculate that information.

14      Q      The two checks which we've just

15  discussed which total just under $50.00.  Would that

16  compensate you for what you believe you're owed in

17  this case?

18          MR. JONES:  Form objection.  Go ahead and

19      answer.

20      A      I leave that to my attorney to

21  calculate.  I have to go over it with my attorney.

22      Q      How would you go about deciding how much

23  you're owed in this case?

24          MR. JONES:  Form objection.  Go ahead.

25      A      I'll have to speak to my attorney.  I'll

1   leave all the calculations up to him.

2        Q     Can you tell me for what work you

3   believe you weren't paid?

4             MR. JONES:  I'll object to the form of

5        that.  Go ahead.

6        A     I guess basically we worked hours that

7   we never got paid for.

8        Q     And when did those hours occur?

9        A     I don't know the exact date or the

10  times.  A couple of months ago, actually I don't

11  know the actual dates and times.

12       Q     I'm going to show you these documents

13  here which are labeled on the bottom GRC-166 through

14  GRC-175.  Have you ever seen these documents before?

15       A     No.

16       Q     Have you seen something similar to this

17  in the past?

18       A     No.

19       Q     These are time card reports reflecting

20  your time records at Global Response.  Just to walk

21  you through one, for example the first one is

22  GRC-166.  The first date on there on the left is

23  Friday, November 29th, 2013, and it says that you

24  clocked in at 9:02 and clocked out at 14:00.

25  Then you clocked back in at 14:30 and clocked out at

Page 16

1    with him?

2         A     I would say two times.

3         Q     How many hours do you think you worked

4    that you were not paid for on those two times?

5              MR. JONES:  Form objection.  Go ahead.

6         A     What do you mean --

7         Q     Do you want me to rephrase the question?

8         A     Yes, please.

9         Q     You went to him two times and said I

10   believe I was working and I didn't get paid for that

11   time, right?

12        A     Yes.

13        Q     How many hours do you believe you

14   weren't paid for on those two times?

15        A     I'm not exactly sure because I worked

16   overtime during the week, whenever they needed

17   overtime, they always needed overtime, but I'm not

18   sure of the calculation of how much hours I missed.

19        Q     Was there ever any resolution to that

20   issue?

21        A     No.

22        Q     Did you speak with anyone else about it?

23        A     No.

24        Q     Just Bill?

25        A     Yes.

1       Q       And just on those two times?

2       A       Yes.

3       Q       If we went through the time cards, you

4  wouldn't be able to tell me on which days you worked

5  that overtime, right?

6               MR. JONES:  Form objection.

7       A       No, I wouldn't be able to.

8       Q       You earlier referenced that you would

9  come in and you would boot up your system, correct?

10      A       Correct.

11      Q       How long would that take?

12      A       I would estimate like five minutes, ten

13  minutes.

14      Q       And you would clock in and boot up your

15  computer, boot up your systems?

16      A       I would have to boot up the system

17  first, because we have to clock in on the computer.

18  I have to get the system booted up first before I

19  clock in.

20      Q       Where in that five minutes were you able

21  to clock in?

22              MR. JONES:  Form objection.  Go ahead.

23      A       After I booted up the system.

24      Q       At the conclusion of that five minutes?

25      A       After five minutes, you have to turn the

1          MR. JONES:  I have nothing further.

2          MR. LANDY:  I have a few more questions.

3               REDIRECT EXAMINATION

4    BY MR. LANDY:

5       Q     You can stay on page 167.  Your shift

6    started at 2:00, right?

7       A     Correct.

8       Q     So you clocked in here at 1:56 on this

9    day, December, correct?

10      A     Correct.

11      Q     What work were you performing between

12      and 2:00 p.m.?                               1:56

13      A     I was actually logged onto the computer,

14   I had my system up taking calls.

15      Q     So for the four minutes before your

16   shift started, you were on the system taking calls?

17      A     Yes.

18      Q     Did you request an override on that day?

19      A     No, I did not.

20      Q     Is it your position that you weren't

21   paid for those four minutes?

22      A     Can you rephrase that?

23      Q     Sure.  There's four minutes between the

24   time you clocked in and the time your shift started.

25   Is it your position that you were not paid for those

1   four minutes?

2          MR. JONES:  Form objection.  Go ahead.

3      A      Yes.

4      Q      If Global Response were to pay you for

5   those four minutes, would that be what you are

6   seeking in this case?

7          MR. JONES:  Form objection.  Go ahead.

8      A      I would have to leave that up to my

9   attorney to calculate the times.

10      Q      I'm not asking you to calculate the

11   times, I'm only asking, if you were to be paid for

12   those four minutes, is that what you're seeking in

13   this case?

14          MR. JONES:  Form objection.  Go ahead.

15      A      I'm not sure exactly what you're asking.

16   Would I want Global Response to pay me for the four

17   minutes?

18      Q      Correct.

19      A      Yes.

20      Q      On the "out" entry for that day, you

21   clocked out at 10:03, correct?

22      A      Correct.

23      Q      What work were you performing between

24   10:00 and 10:03?

25      A      I was on a call and we had to finish up

Page 1

1              UNITED STATES DISTRICT COURT

               SOUTHERN DISTRICT OF FLORIDA

2

3                 CASE NO. 0:14-cv-62673-Cohn/Seltzer

4

5    TERRY MURPHY, ON HIS OWN BEHALF

     AND OTHERS SIMILARLY SITUATED,

6            Plaintiff,

7    -vs-

8    GLOBAL RESPONSE CORPORATION,

     A FLORIDA CORPORATION,

9            Defendant.

10   _____/

11

12               Wednesday, March 18, 2015

                 Veritext, LLC

13               One East Broward Boulevard, Suite 1101

                 Ft. Lauderdale, Florida 33301

14               11:30 a.m. - 12:50 p.m.

15

16           DEPOSITION OF SHAMIKA WALKER

17

18

19   Deposition taken before TAMMY WALKER ZIVITZ, Registered

20   Professional Reporter and Notary Public in and for the

21   State of Florida at Large, in the above cause.

22

23

24

25

Page 25

1        A     It wasn't anyone in particular.  Just like

2    when I'm at my desk, we all sit just like this so

3    I'm hearing conversations.  If I go to lunch, I'm

4    hearing conversations.  If I'm outside, I'm hearing

5    conversations.

6        Q     How many hours do you believe you worked

7    for which you were not paid?

8        A     I don't know.  That's why I have my

9    lawyer.

10       Q     What about the end of your shift, was it

11   the same situation at the beginning of your shift

12   where there was time in which you claim you weren't

13   paid for?

14       A     Yes.

15       Q     Under what circumstances did that happen?

16       A     Can you -- I don't understand the

17   question.

18       Q     So before the shift, you said sometimes

19   you'd come in, there would be a back log, you would

20   jump on a call?

21       A     Correct.

22       Q     Okay.  What happened at the end of the

23   shift where you would -- are you claiming that you

24   worked after your shift ended?

25       A     Yes.

1      A    Yes.

2      Q    It reflects that you clocked in at 7:58

3  a.m., and you clocked out at 16:09, correct?

4      A    Mm-hmm, yes, sorry.

5      Q    So did you work before or after your shift

6  on that day for which you weren't paid?

7      A    Okay.  And if I'm not proper, you can let

8  me know, but I think it reflects back to the

9  question you just asked me:  What days I did not get

10  paid for.  I think this is the same question.  This

11  is confusing.  I don't see the dollar amounts.  So

12  for me to say, "Oh, yeah, this is definitely a day,"

13  I wouldn't be able to do that.

14      Q    Let me rephrase the question.  Monday,

15  June 2013, did you perform any work before 7:58

16  a.m.?

17      A    No.

18      Q    Did you perform any work after 16:09?

19      A    Not to my knowledge that I can remember.

20      Q    So what I'm trying to get at is if I've

21  got the clock-ins and the clock-outs, that reflects

22  all the time that you worked, right?

23      A    Yes.

24      Q    So if you were paid for less than all of

25  the clock-ins and clock-outs, right, assume that.

Page 33

1    look through this and say, "Oh, this is definitely

2    one."

3         Q    Was there any other work that you're

4    claiming that you were doing that you weren't paid

5    for?

6         A    No.

7         Q    So my office sent -- going back to Exhibit

8    4, my office sent your attorneys a check for $359.90

9    and for $400.  You said you had not received those,

10   correct?

11        A    Correct.

12        Q    If you received those amounts, would that

13   compensate you for all the time that you believe

14   that you weren't paid for?

15             MR. QUILES:  Objection to form.

16             THE WITNESS:  I don't know.  I'm not

17        absolutely sure.  I'm not sure.

18   BY MR. LANDY:

19        Q    Okay.  What amount of money do you think

20   would compensate you for all the time that you

21   believe you weren't paid for?

22        A    I'm not sure either.  That's what I --

23   that's what my attorney is for, for me to -- for him

24   to figure that out, I'm not sure.

25        Q    So just to, so I'm clear, you don't know

Page 34

1    how much money you're asking for in this lawsuit,

2    right?

3         A    No.

4         Q    You don't know how many hours you're

5    asking for in this lawsuit?

6         A    No.

7         Q    I'm going to show you what we already

8    marked as Exhibit 3.  Have you ever seen that email

9    before?

10        A    Yes.

11        Q    Did you receive that email?

12        A    Yes.

13        Q    When did you receive that email?

14        A    I want to say September, October of 2014.

15        Q    Did you have a Global Response email or --

16   while working at Global Response, did you have a

17   work email through them, email address?

18        A    Yes and no.

19        Q    Explain, please.

20        A    I had, and I believe it's still active,

21   have an email, but it's only for me.  Like, I just

22   went and printed the W-2 off of there.  I can't send

23   any emails or receive any emails.  I only can look

24   at me.

25        Q    So you received that email at your

Page 45

1    indicated that on a normal day you would come in,

2    not a day when you came in and they rushed you on

3    the phone, but on a normal day you would come in and

4    log in?

5         A    Correct.

6         Q    Could you describe in as much detail as

7    you recall the log-in process at Global?

8         A    Well, I did 25 different accounts so when

9    I come in, I don't go anywhere but straight to my

10   desk, and because I do so many different accounts, I

11   have three to four different systems I log into, not

12   to mention clock in, which is a different system.

13        So on average, it would take me at least

14   ten minutes to log in to all the different systems

15   and clock in, and to actually be ready to take

16   calls.

17        Q    And where does the clock-in system -- is

18   there a specific order in which you had to do this?

19        A    No.

20        Q    So would you --

21        A    No particular order.

22        Q    So which system would you log into first?

23        A    It depends.  You have to figure Global is

24   all working on this network, and so many people on

25   the network slows it down.  So you can't bring up

1   too much at one time or else you're stuck, and the

2   computer -- that has been the case many times, your

3   computer gets stuck -- your answer is, get up and

4   move to the next one.  So I would have to open up

5   one at a time.

6          My normal procedure would be to open up

7   the clock-in window first.  If that's taking too

8   long while I'm waiting, I see if I can pop open my

9   others.

10      Q    How long or how frequently would it happen

11  that, that clock-in program would stall on you and

12  you would spend time logging into the others?

13          MR. LANDY:  Object to the form.

14  BY MR. QUILES:

15      Q    You can answer, if you understand my

16  question.

17      A    Can you repeat it one more time?

18      Q    Yeah.  How frequently would the program to

19  log in -- to register your time, how frequently

20  would that program stall require you or prompt you

21  to go to another program to try to log in?

22          MR. LANDY:  Object to the form.

23          THE WITNESS:  That was all the time.  It

24      was normal.

25

Page 1

1           IN THE UNITED STATES DISTRICT COURT
2           FOR THE SOUTHERN DISTRICT OF FLORIDA
3
4   TERRY MURPHY, on his own    )
                                )
5   behalf and others similarly )
                                )
6   situated,                   )
                                ) CASE NO.:
7           Plaintiff,          )
        vs.                     ) 0:14-cv-62673-
8                               )
    GLOBAL RESPONSE CORPORATION,) Cohn/Seltzer
9                               )
    a Florida corporation,      )
10                              )
            Defendant.          )
11  --------------------------- )
12
13                  April 1, 2015
14
15                   6:14 p.m.
16
17          Deposition of HENRY SYLVERAIN, held at
18  the offices of Veritext Legal Solutions, 1250 I
19  Street, N.W., Washington, D.C., before Keith A.
20  Wilkerson, a Notary Public in and for the District
21  of Columbia.
22
23
                    VERITEXT LEGAL SOLUTIONS
24                    MID-ATLANTIC REGION
                 1801 Market Street - Suite 1800
25               Philadelphia, Pennsylvania  19103

Page 9

1   not booting up or it's taking forever," you know,

2   they kind of frowned down upon that.  They would

3   say, "You should be here a little bit earlier to

4   boot up your system."

5        Q.   Did he ever say to you that you should

6   have been there before 1:00 to get your system

7   booted up?

8        A.   He never specifically said it to me, but

9   it was implied.  I don't remember exactly if he said

10  it to me directly or not, but I know that for sure

11  that they expected us to.

12       Q.   And how about the other manager, who

13  we'll refer to as either Janelle or Angela?  Did she

14  ever tell you to arrive before your shift started?

15       A.   I don't remember hearing from her a lot.

16       Q.   And how long would it take for your

17  system to boot up, as you were describing?

18       A.   Well, they were using thin clients, these

19  older thin clients that took forever, and I would

20  say about it would take five to ten minutes for them

21  to boot up if they booted up correctly.  And, say,

22  if Citrix stopped loading up correctly or the pages

23  were not working, then we had to do it all over

24  again.

25       Q.   So it took you five to ten minutes to

Page 14

1    to see the date, but I think it was probably a month

2    or two months ago, I think.  It was less than two

3    months ago.

4        Q.    Now, these checks, one for $46.17 and one

5    for $50, would these checks compensate you for the

6    amounts of your claim in this case?

7                MR. QUILES:  Objection.  Form.

8                BY MR. LANDY:

9        Q.    You can answer the question.

10                MR. QUILES:  From time to time, Henry,

11    I'm going to make objections to preserve the record,

12    but unless, like I did a few minutes ago where I

13    instructed you not to answer, you can go ahead and

14    answer Mr. Landy's question.

15        A.    Can you repeat the question?  I'm sorry.

16                MR. LANDY:  Can you read the question

17    back, please?

18                (The record was read by the reporter.)

19                THE WITNESS:  I think that that would be

20    between me and my attorney to decide.

21                BY MR. LANDY:

22        Q.    How much do you believe you are owed in

23    this case?

24                MR. QUILES:  Same objection.

25        A.    I believe that is between me and my

Page 15

1    attorney to decide.

2          BY MR. LANDY:

3          Q.    One of the documents in front of you

4    should be a bundle of papers which at the top say

5    Archived Time Card Report.  Let me know when you

6    have those.

7          A.    I have them.

8          Q.    And just to make sure we're looking at

9    the same thing, at the bottom right of these pages

10   there should be some numbers that say GRC 158

11   through GRC 165.  Is that the same thing that you're

12   looking at?

13         A.    Yes.  That is correct.

14         Q.    Have you ever seen these documents

15   before?

16         A.    Yes.  I've seen them in an e-mail.

17         Q.    And are these time card reports of your

18   work at Global Response?

19         A.    They look like them.

20         Q.    Just so we're looking at the same thing,

21   on the first page, which is GRC 158, on Thursday,

22   October 23rd, 2012, you clocked in at 9:56 and you

23   clocked out at 16:24.  Correct?

24         A.    I'm looking at -- can you restate that

25   once again?  I'm sorry.

1    you would begin working?

2        A.    Yes.

3        Q.    And then at the end of your shift you

4    would punch out and leave.  Correct?

5        A.    That is correct, yes.

6        Q.    So if I have all of the times that you

7    punched in before your shift and all of the times

8    you punched out after your shift, that would reflect

9    all of the time that you worked.  Correct?

10       A.    The times that I punched in and the times

11   that I punched out?  It would reflect that.

12       Q.    So if you were paid for all of the time

13   reflected on these time cards, that would be what

14   you're seeking in this case.  Correct?

15       A.    That is between me and my attorney to

16   decide.

17       Q.    Were you familiar with something called

18   the override policy at Global Response?

19       A.    I do not remember that policy.

20       Q.    Is it your position in this case that

21   Global Response owes you wages that you weren't

22   paid?

23       A.    Yes.  That is correct.

24       Q.    Did you ever address that issue with

25   anybody at Global Response before filing this

Page 1

```
 1               UNITED STATES DISTRICT COURT
 2               SOUTHERN DISTRICT OF FLORIDA
 3                CASE NO. 0:14-cv-62673-Cohn/Seltzer
 4
 5    TERRY MURPHY, ON HIS OWN BEHALF
      AND OTHERS SIMILARLY SITUATED,
 6              Plaintiff,
 7    -vs-
 8    GLOBAL RESPONSE CORPORATION,
      A FLORIDA CORPORATION,
 9              Defendant.
10    _____/
11
12              Wednesday, March 18, 2015
                Veritext, LLC
13              One East Broward Boulevard, Suite 1101
                Ft. Lauderdale, Florida 33301
14              4:40 - 5:45 p.m.
15
16              DEPOSITION OF SHADEEN WALTERS
17
18
19    Deposition taken before TAMMY WALKER ZIVITZ, Registered
20    Professional Reporter and Notary Public in and for the
21    State of Florida at Large, in the above cause.
22
23
24
25
```

Page 8

```
 1        A    No, I did not.

 2        Q    Were you aware of their existence before

 3   today?

 4        A    Yes.

 5        Q    Do you think that those checks would

 6   compensate you for the amount that you believe

 7   you're owed by Global Response?

 8        A    That's something that me and my attorney

 9   would need to discuss.

10        Q    Is it your position that you're owed money

11   from Global Response?

12        A    Yes.

13        Q    How much do you believe you're owed from

14   Global Response?

15        A    I don't know.

16        Q    Do you believe there's a number of hours

17   that you worked that you were not paid for?

18        A    I don't know exact figures because that's

19   a while ago.

20        Q    Without an exact number, do you think this

21   is a number of hours that you worked that you

22   weren't paid for?

23        A    Yes.

24        Q    But sitting here today, you can't tell me

25   how many hours that is?
```

Page 11

1      Q    So once you clocked in is when you started

2   your work?

3      A    Yes.

4      Q    Even if that was before your shift?

5      A    Yes.

6      Q    What work would you do before your shift,

7   before your scheduled shift?

8      A    You bring up all of your tools, respond to

9   emails, get everything set up for your first call,

10  make sure your chat is set up because we use

11  Messenger because our clients are in Spain.

12     Q    How long would that take?

13     A    I would say it depends.  Sometimes your

14  computer is slow, sometimes it's a simple setup.  It

15  depends on the day.  Technology is very --

16     Q    30 seconds?

17     A    No, we had, like, three or four different

18  systems that we used.

19     Q    More than a minute?

20     A    More than a minute.

21     Q    Under five minutes?

22     A    It depends on the day.  Like, one day

23  could be an easy setup, another day you're trying to

24  log in to your computer, you can't.  It all differs.

25  Every day is not the same.

1      Q    On a typical day, under five minutes or

2   over five minutes?

3           MR. QUILES:  Object to form.  You can

4      answer the question.

5   BY MR. LANDY:

6      Q    Yes, you can answer.  On a typical day,

7   would it take under five minutes?

8      ·      MR. QUILES:  Same objection.

9           THE WITNESS:  I can't say exactly.

10  BY MR. LANDY:

11     Q    Okay.  So I'm going to show you some

12  documents that I've marked as GRC-174 through

13  GRC-195.  Have you ever seen these before?

14     A    Not laid out like this.

15     Q    Have you seen anything similar to these?

16     A    Just my hours.

17     Q    So would these be your hours that you

18  worked, that you were clocked in on the days that it

19  shows?

20     A    It looks about right.

21     Q    Sitting here today, you're not disputing

22  that these were not the times that you clocked in

23  and out, right?

24     A    No.

25     Q    So let's use the first one.  For example,

Page 15

```
 1   your position that you're owed.

 2            So what you've told me is that you didn't

 3   perform any work before you clocked in, and you

 4   didn't perform any work after you clocked out,

 5   correct?

 6        A    Repeat.

 7        Q    Sure.  Did you perform any work before you

 8   clocked in?

 9        A    No.

10        Q    Did you perform any work after you clocked

11   out?

12        A    No.

13        Q    So the time that you worked is the time

14   between your clock-in and your clock-out?

15        A    Yes.

16        Q    If you were paid for all of those hours,

17   and to the extent that they were overtime hours, you

18   were paid time and a half, that would be how much

19   you would be owed, correct?

20            MR. QUILES:  Objection, form.

21            THE WITNESS:  Not necessarily because if I

22        was given that at the time, then, I guess, we

23        wouldn't really be here, would we?

24   BY MR. LANDY:

25        Q    Understood.  I'm talking about at the
```

Page 1

1              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF FLORIDA

2

3                 CASE NO. 0:14-cv-62673-Cohn/Seltzer

4

5    TERRY MURPHY, ON HIS OWN BEHALF
     AND OTHERS SIMILARLY SITUATED,

6              Plaintiff,

7    -vs-

8    GLOBAL RESPONSE CORPORATION,
     A FLORIDA CORPORATION,

9              Defendant.

10   _____/

11

12                Wednesday, March 18, 2015
                  Veritext, LLC

13                One East Broward Boulevard, Suite 1101
                  Ft. Lauderdale, Florida 33301

14                9:10 - 10:30 a.m.

15

16                DEPOSITION OF TERRY MURPHY

17

18

19   Deposition taken before TAMMY WALKER ZIVITZ, Registered

20   Professional Reporter and Notary Public in and for the

21   State of Florida at Large, in the above cause.

22

23

24

25

Page 24

```
 1    I would say the last two weeks were disproportionate
 2    as far as the additional time spent.
 3        Q    But you said, it would be an average of
 4    three hours a week?
 5        A    I would say -- I have no -- I didn't
 6    specifically keep the time, keep that kind of a
 7    record, but I believe that I logged that many
 8    additional hours in as work, somewhere in that
 9    range.
10        Q    So if Global Response were to pay you for
11    three hours a week for the term of your employment,
12    that would be what you're seeking in this case?
13            MR. QUILES:  Objection, form.
14    BY MR. LANDY:
15        Q    You can answer the question.
16        A    Do I have to answer the question?
17        Q    Yes.
18        A    I'm not sure that, that is the sum total
19    of what's owed.  I don't know.  I want what is
20    entitled to be paid to me.
21        Q    In this case, you're seeking unpaid wages,
22    right?
23        A    Yes.
24        Q    Anything else?
25            MR. QUILES:  Object to the form.
```